MARTHA B. LIPPITT *v.* WILLIAM S. HUSTON.

The statute providing methods to bar an estate tail by acknowledgment in court, is complete in itself, in case of a married woman as of other persons, and a further compliance with the statute prescribing the mode of acknowledgment of a deed by a married woman is not necessary for this purpose.

The statute limiting an estate tail to the children of the first devisee does not limit the estate tail to the children of the devisee in tail only, but to the children of the first devisee whatever may be the estate first devised.

THIS is a bill in equity to compel the specific performance of a contract for the purchase of land. The case was stated in the bill and heard upon demurrer.

The bill states the objections made by the defendant to the title in the following terms:—

"*Firstly.* That of undivided parts of said lot, one Elizabeth H. Cowell and one Sally B. Wilcox were formerly respectively possessed and seized in fee tail, as children of one Martha Howell, under the provisions of the last will of one Wait Smith (of which a copy is herewith filed); and that the acknowledgments of the deeds, by which they respectively conveyed their respective interest in said lot to your oratrix, were insufficient in law to vest in her an estate in fee simple in the premises,—the certificate of acknowledgment upon the deed of the said Elizabeth H. Cowell being in the words and figures following, to wit:—

"'The State of Rhode Island and Providence Plantations.

"'Providence, sc.                                       Supreme Court.

March Term, A. D. 1851.

"'On this thirty-sixth day of said term, being the 21st day of May, A. D. 1851, personally came Benjamin Cowell and Elizabeth H. Cowell, signers of the aforegoing instrument, and, in open court, and by leave thereof, acknowledged the same to be their free act and deed, hands and seals; and the said Elizabeth H. Cowell, having been examined privily and apart from

her said husband, says that she has read and understands said instrument, and does not wish to retract the same.

"'Given under my hand and the seal of said Court, [SEAL.] this 21st day of May, A. D. 1851.

"'WALTER PAINE, Jr., *Clerk.*'

"And the certificate upon the deed of the said Sally B. Wilcox being in the words and figures following, to wit:—

"'The State of Rhode Island and Providence Plantations.

"'Providence, sc.                             Supreme Court.
[SEAL.]                             September Term, A. D. 1848.

"'On this thirty-third day of said term, being the first day of November, A. D. 1848, personally came Horace A. Wilcox and Sally B. Wilcox, his wife, and in open Court and by leave thereof, acknowledged the afore-written instrument to be their free act and deed, hands and seals; and the said Sally B. Wilcox, having been examined privily and apart from her said husband, declares that she has read and understands the same; that the same is her voluntary act and deed, and that she does not wish to retract the same.

"'In testimony whereof, I hereunto set my hand and affix the seal of said Court, this first day of November, A. D. 1848.

"'WALTER PAINE, Jr., *Clerk.*'

"*Secondly.* That Martha H. Burrough (who is the only child of Waity F. Walker, long since deceased intestate, who, while in life and at her decease, was co-tenant in tail—under the provisions of Wait Smith's will aforesaid—with her afore-named sisters, Elizabeth and Sally B., of a portion of the lot aforesaid), in 1866, was possessed and seized simply of an estate tail in the land aforesaid—as issue in tail of her said mother, said Waity F.—and, therefore, her deed of May, 1866, made and delivered to your oratrix, not having been acknowledged in open Court, did not vest in your oratrix a title in fee simple in the land described therein."

The will of Wait Smith, referred to in the bill, devised the

estate in question, for life, to Martha Howell, and then, subsequently therein, in terms which had been adjudicated by this Court, to constitute an estate tail in her children. *Burrough and wife* v. *Foster*, 6 R. I. 534. The statutes referred to are in the following terms :—

Chapter 145, section 3, provides that—

" Any person seized of an estate in fee tail, shall have right to convey the same in fee simple, by his last will and testament, or by deed duly executed under his hand and seal, and acknowledged before the Supreme Court or any Court of Common Pleas, in this State; and such conveyance shall vest an estate in fee simple in the grantee, his heirs and assigns, and shall bar the tenant in tail, his heirs and assigns, and all others who may claim the same in remainder or reversion, expectant upon the determination of such estate tail."

Chapter 136, section 6, provides that—

" Where the husband and wife, being of lawful age, are seized of any lands, tenements or other real estate, in the right of the wife, they shall be authorized to convey the same by deed or other instrument in writing, signed, sealed and delivered by them respectively.

" Sec. 7. In every such case the wife acknowledging such deed or instrument shall be examined privily and apart from her husband; and shall declare to the officer taking such acknowledgment, that the deed or instrument shown and explained to her by such magistrate is her voluntary act, and that she doth not wish to retract the same.

" Sec. 8. If the wife, on such privy examination, shall refuse to make such acknowledgment, the deed or other instrument executed by the husband and wife as aforesaid, shall not operate to convey to the grantee named in such deed or instrument, any other or greater estate in the premises described in such deed than what belongs to the husband."

The brief for the respondent was submitted and argued by *James Tillinghast:*—

The plaintiff's title, as set out in her bill, is defective.

I. The acknowledgments by Mrs. Cowell and Mrs. Wilcox,

as set out in the bill, are fatally insufficient. 1. The acknowledgment by a married woman, in open court, to bar an entail of her estate, must be with the same formalities as upon an ordinary deed before a magistrate. At common law she cannot convey at all. Her deed must therefore conform to the statute. Compare Rev. Stats. p. 316, §§ 6 and 7, p. 334, § 3, with Digest of 1798, p. 267, § 7, p. 298, § 10, where both these sections were first enacted as parts of the same act. 2. The certificate of the magistrate must show all the statute formalities complied with. It is well settled that no other proof than the certificate can be received. 3. Neither of the acknowledgments in this bill shows that the deed was shown and explained by the magistrate to the wife, nor anything substantially like it. Her own reading and understanding of the deed, for aught that here appears, may have been in the presence of her husband, and governed by his erroneous (whether intentionally or unintentionally so) explanation of it, the very thing the statute designed to guard against. See *Lessee of Watson* v. *Bailey*, 1 Binney, 470; *Fowler* v. *McClurg*, 6 Serg & Rawle, 143; *Pease* v. *Barbier*, 10 California, 436; *O'Farrall* v. *Simplot*, 4 Iowa, 162. 4. The acknowledgment by Mrs. Cowell is also fatally defective in not showing her declaration that the deed was her voluntary act. Compare above cases; also, *Grove* v. *Zumbro*, 14 Grattan, 501; *Ward* v. *McIntosh*, 12 Ohio, 231.

II. Upon the facts as stated in the bill, Mrs. Burrough is tenant in tail of one-sixth of the estate,—she being the child of the first devisee in tail—which entail has never yet been barred. Rev. Stats. ch. 154, p. 357, § 2.

The complainant's brief was submitted and argued by *J. P. Knowles:*—

I. The acknowledgments in question were *all*-sufficient. 1. The statute of 1844 (§ 13, p. 261) is satisfied by a simple *acknowledgment*, without more, by the tenant in tail, whether married or single. 2. The words used in the certificate are equivalent to any which the statute can be held to require. 3. The words "shown and explained" are not *essentials* in a

certificate. *Churchill* v. *Munroe*, 1 R. I. 209. 4. Defects were cured by the wills of Mrs. Cowell and Mrs. Wilcox.

II. Under the will of Wait Smith, the daughter of Waity F. Howell—*alias* Walker—took an estate in fee simple in their share of the estate, of which said Waity F. was tenant in tail. Nothing is to be found in the Rhode Island Reports that militates with this proposition,—nor in said will. *Chadock* v. *Cowleys*, Cro. Jac. 695.

The opinion of the Court was given by

BRADLEY, C. J. This cause, heard upon demurrer to a bill in equity for the specific performance of a written contract for the purchase of land, raises only questions of title to the property. And those questions turn chiefly upon the construction of the statutes of the State prescribing the mode of barring estates tail in open court, and the devise of such estates.

It is claimed that, in addition to the acknowledgment made in open court to bar the entail, with the cautions and methods known to the law in taking such acknowledgments, that an additional requisite not named in the statute upon this subject is required, to wit : that the formula required by another statute to be observed by a magistrate, in taking an acknowledgment of a married woman, is to be followed as strictly by the court, in the exercise of their powers under this statute, as by the magistrate in the exercise of his statutory authority.

The first answer to this claim is, that the statute does not in terms—in express terms—so require. If the legislature had intended that special forms and modes of procedure were to be followed in any cases in the proceedings before them to bar an entailed estate, such intention would naturally have been expressed in the statute upon that subject. None such having been expressed by them, none such, upon the ordinary rules of construction in our day, should be declared to exist in the law. The rule for the construction of statutes is to give them "their plain and obvious meaning." In the language of Blackstone, to give the "words" the "signification" they bear "in general and popular use." 1 Bl. 60. There is no occasion, certainly, in these days, for either the "awkward shifts," the "subtle inforce-

ments," the "strange reasonings,"—to use again the words of
Blackstone,—in construing or evading statutes, which that com-
mentator declares were resorted to by the courts, in carrying out
the policy of the monarch who appointed them, and a policy
also favorable to the interests of the public, in opposition to that
of the parliament which enacted the statutes. In our time the
legislature and the court intend to enact and construe statutes
in the plain sense in which men of average intelligence in the
community will understand and apply them.

It may not require great professional learning or ingenuity to
suggest other and plausible constructions. But when a court
departs from the plain and obvious sense, and imports by con-
struction into a statute something unseen and unexpressed
there, they incur two dangers: first, that we make law and do
not simply confine ourselves to the humbler task of applying it,
and thus go beyond our right and duty. And, secondly, there
is danger that, in this way, we disturb titles instead of securing
to them that peace and repose which the law intends to grant.
In short, by our mere word, in construing a statute, we may, in
point of fact, give away the property of those who hold it, to
those who before never supposed they had any right to it.
These dangers, it seems to us, exist in this case. But, to give
this claim further consideration, is it unreasonable to suppose
that the legislature, in directing the performance of certain acts
in open court, in the two highest tribunals of the State, should
trust that those courts would, as other courts in similar cases
always do, exercise a reasonable oversight that acts thus per-
formed before it, recorded upon its records, certified by its clerk
and made a part of the chain of title of real estate,—acts, too,
which take away property from those who are not before the
court,—should be done intelligently and fairly. Why is the
business sent to those courts except that it calls for the exercise
of that discretion and judgment which, in the theory of our law,
they are presumed to possess in a higher degree than every indi-
vidual of the numerous magistrates who are authorized, through-
out the State, to take acknowledgments. On the other hand, is
it reasonable to suppose that the legislature would require the

courts to follow the same precise formulas which they prescribe for every such single magistrate or certifying officer, or, at least, if they so intend, would they not so explicitly say?

For the question, it is to be remembered, is not whether it is the duty of the court to cause the married woman before it to understand the effect of the act in which she is engaged, as they have done in the present instance, but whether it must not also certify to precisely the same proceedings and in the same words which are required of these ordinary magistrates. We think, from the difference in the tribunals, not less than from the terms of the two provisions, that a different and larger measure of discretion might be reasonably given to the highest courts of the State, than to its simple justice of the peace and notary public.

Such a view is also consonant to the analogies of the law in such cases. Courts of equity, in passing upon causes which touch the interests of married woman, of their own motion and not in pursuance of precise statutes, enquire as to her actual and intelligent consent to the attempted disposal of her property. 1 Danl. Ch. Pr. 115.

So courts of law, in proceedings analogous to this,—in short, in these very proceedings for which the statute in question was intended to be the substitute and equivalent,—took care to enquire whether the barring of the entail in the wife was "the result of her free choice or of the husband's compulsive influence,"—to use the phrase of Mr. Hargrave,—and this of their own motion. Proceeding to bar the entail in the English law by fine, was but the acknowledgment in a feigned suit, in open court, of a previous conveyance by the tenant in tail. And though, under the English law, a woman could not bind herself or her heirs by any of the direct modes of alienation, she was, in this indirect mode, under the sanction and in the presence of the courts, allowed to convey her estate tail, and convert it into a fee simple. Thomas Co. Litt. 132 c. p. 1. Our statute, to enable parties to bar an entail by acknowledgment of a conveyance in open court is, unquestionably, but the simpler equivalent of the old English mode in their courts termed fines and recovery. And thus these statutes are always treated.

And in the light of this analogy, certainly the most direct one to be found in the law, we 'can sustain the power of our courts, or, more strictly speaking, of the parties themselves proceeding, in open court, to bar the entail of a married woman's estate by acknowledgment as provided in this statute, and conducted, as we have seen, in the courts in which this mode of conveyance had its origin,—that is, in the discretion and judgment of the court, and not in precise forms or terms prescribed for other proceedings and other magistrates. And we have no occasion to resort to another statute when this is intelligently and learnedly understood, if the expression may be allowed, to find the power of a married woman to convey her estate tail in fee simple.

And it is certainly to be presumed, that the committees and the legislature, which have, on so many occasions, revised and reënacted this law, understood its purpose and its office, or the place which it filled in the common law system of conveyancing, and that mode of common assurances in the law of which it took the place. And they had no occasion to say or do more, following these precedent analogies, than they have said or done simply and directly on the face of this statute, to accomplish its whole object and purpose.

That such is the view taken of it by our legislature, seems to be very apparent from their supplementary legislation on this subject. By that act, this court has been authorized to appoint commissioners to take the acknowledgments of conveyances of estates in tail, with the same effect as if taken in open court. And that statute expressly leaves the mode of proceedings before such commissioners to be guided by such instructions as the court, in its discretion, may direct.

Certainly, the legislature would hardly intend that the court should, in its action, be bound by given forms, and yet leave the action of commissioners appointed by the court to be regulated only by such direction as the discretion of the court itself thought fit to impose.

Again, the view which we have taken of this act seems to be the view taken by our courts hitherto. There is, among the

many forms kept in the clerk's office, no form for this proceeding. If there was any necessary and essential form in barring an estate tail, as to the mode of enquiry to be addressed to a married woman and the nature of her rights, it would hardly have been omitted among these forms. Again, the practice of the court seems to have been, as in the form before us, to embody the substance of the enquiry and the answers which the court in its judgment thought fit, in the particular case, to require. We cannot suppose that those who have preceded us here did not correctly understand the statute law of the State upon a question so practical and so frequently arising, or that they so negligently administered that law that their proceedings in regard to it should be found to be of no more moment than so much white paper. That those who, following the statute of the State, relied upon the court to take care that what was done in its presence, entered upon its records as part of its proceedings, and certified by its clerk, with the intent of making a title to real estate, converting a fee tail into a fee simple estate, should find that they had leaned upon a broken reed. And that essential forms were not complied with, and therefore the estates, as in this instance, conveyed by those now dead, do not belong to those who paid their money for them, but to others who, till now, never supposed they had any claim to them. Such estates, after large expenditures by the rightful owner, may thus fall into the hands of minors or married women, or persons under disability, or of those who, if not under disability, may choose to stand upon the technical titles. Our judgment upon this point is, that the acknowledgments, taken before this court by Mrs. Cowell and Mrs. Wilcox, were sufficient, under the law of the land, to pass the estate tail in them vested by Wait Smith to the grantee in these deeds, Mrs. Lippitt, in fee simple, and that, therefore, this objection to her title is not sustained.

Another objection to the title proposed in this case is of a similar character. And the application of the same principles of construction, and similar reasoning as to the effect to be given to rules of property, brings us to the conclusion that it also is invalid.

The statute of wills, under which the second question is made, provides, among other things, "that no person seized in fee simple shall have a right to devise any estate in fee tail for a longer term than to the children of the first devisee," and a devise for life to any person and to the children or issue generally of such devisee in fee simple, shall not vest a fee tail estate in the first devisee, but an estate for life only, and the remainder shall, on his decease, vest in his children or issue generally, agreeably to the direction in such will. The will in question devises the entire estate for life to Mrs. Howell, and then in fee tail, as this court have twice decided, to the children of Mrs. Howell. It is claimed that the estate in tail descends to the grand-children of Mrs. Howell, of whom Martha Walker was one, and therefore her conveyance, which is found in the chain of title in question, having been acknowledged in common form, and not in open court, did not bar the entail, but the same is still outstanding in her, and the title of Mrs. Lippitt is therefore so far defective in the premises in question.

The will of Wait Smith has been twice before this court, and once before the United States Circuit Court, for construction as to the nature of the estate devised to the children of Mrs. Howell. It having been claimed that it was an executory devise in them, and not an estate tail. The court have held otherwise. But they have never held, nor has it been urged, that the estate of the grand-children was an estate tail.

So far as the statute bears upon the question, the simple and natural reading of it limits a fee tail to the children of the first devisee. That first devisee of course may be, as in this case, a devisee for life, or for years, or in fee tail. The statute certainly does not in terms say that it must be one only of those devisees. It seems to us to be a general provision in restraint of entailment, to limit that estate to the children of the first devisee in the will. We are asked, judicially, to insert in the statute, after the word first devisee, as it stands generally, the phrase " in tail." By so doing, by inserting in the statute language which those who have, from time to time, reënacted it, have not used, we are in danger of adding to the meaning of the statute, and

thus make a law which the legislature has not made or intended to make. In fact, such a construction is open to all the dangers which ever arise with the departure from the plain and obvious meaning of a statute. The succeeding clause of the section again cuts down the estate in tail in the first taker, having in view the rule in Shelly's case, to an estate for life, thus in every way restricting entailment, which the construction asked for would enlarge to an additional generation. The spirit and policy of all American law has been to limit and destroy estates tail. The construction claimed would enable a devisee to devise for life, and then in tail to two succeeding generations. Such a construction, so inconsistent with the spirit of our law, should produce plain and unmistakable language before it claimed the approving judgment of the court. It is claimed that the construction of the statute would be difficult, were the first devisee in tail not the children of the first devisee in the will. That may be. We can apply the statute to a will where such is not the case. And difficulties in supposable and exceptional cases are not to change the natural construction of a statute in these cases for which it was chiefly made.

But upon this question it would seem to be enough to show, as has been done by the counsel for the complainant, that this plain and obvious construction of the statute has obtained in the practice of the State to such an extent that even upon this property many conveyancers have been cited in which the validity of this title has been recognized. The plain and straightforward mind of that conveyancer who stood foremost among us in the last generation, as the reliable counsellor upon questions of title to real property, has again and again passed this title when acting for those who are most scrupulous, like our Savings Bank, in avoiding titles upon which even a query of litigation can arise. The clients of our late Chief Justice, whose learning was known and recognized throughout the country, after his mind had been called to the nature of this title, by acting as counsel in litigation in regard to the will, the very purpose of which was to determine whether the acknowledgment made by the mother of Mrs. Burrough were necessarily

to be made in open court, accepted deeds made by Mrs. Burrough in the same form as this at bar in family settlement, when even the mere suggestion of a doubt or question would have obtained a different acknowledgment. In fact, some of the most valuable properties in the city of Providence have been improved by great expenditures, and are now held under just the same title. These many conveyances must have received the approval of a large portion of the bar. Such a general sanction by the profession, without, so far as is known, a single query as to its correctness, such long established construction of a statute, constituted, like the practice and construction of courts, a rule of property in itself, which it is perilous in the last degree for courts to disturb and overturn upon suggestions of possible or even probable construction of statutes. Upon this construction of the statute, this community and the profession have acted undoubtedly for a long term of years. We cannot consent to its overthrow by inserting in the lines of a statute terms which the legislature has not used, and which nothing but the optional discretion of a court is called upon to insert in them.

As the objections to the title are not sustained, the complainant is entitled to her decree.